UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GERARDO SOLANA, individually and on behalf of all others similarly situated,

    Plaintiff,

- v -

USAA FEDERAL SAVINGS BANK,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Civil Action No.

### NOTICE OF REMOVAL

USAA Federal Savings Bank ("USAA FSB" or "Defendant") hereby removes the above-captioned action from the Supreme Court of Kings County, New York to the United States District Court for the Eastern District of New York under 28 U.S.C. §§ 1446, 1453, and the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1711–15 ("CAFA").

**I.    INTRODUCTION**

1.    On September 16, 2024, Plaintiff Gerardo Solana filed this lawsuit in the Supreme Court of Kings County, New York, styled as *Gerardo Solana v. USAA Federal Savings Bank*, Case No. 525020/2024 (the "State Action"). On October 2, 2024, USAA FSB stipulated to waive formal service of process.

2.    Plaintiff alleges that an unauthorized third party gained access to USAA FSB's systems between December 20, 2022, and May 18, 2023, and exfiltrated personally identifiable information of certain USAA FSB members.[1] Compl. ¶ 5. Plaintiff asserts a negligence claim on

---

[1] Plaintiff's complaint in the State Action is virtually identical to the amended complaint he previously filed in this Court. *See* Am. Compl., *Solana v. USAA Federal Savings Bank*, Case No. 1:23-cv-06793-NCM-JRC (E.D.N.Y. Sept. 27, 2023) (ECF No. 5). On November 22, 2023, USAA FSB filed a letter motion requesting a pre-motion conference on USAA FSB's then-

1

behalf of a putative class of "[a]ll persons whose PII was accessed and/or exfiltrated during the . . . Incident," which Plaintiff alleges to include approximately 18,000 individuals. Compl. ¶¶ 44, 46. Plaintiff seeks a broad range of injunctive relief, actual, consequential, and nominal damages, attorneys' fees, costs, litigation expenses, and interest. Compl. at 14–16.

3. As shown below, the State Action is removable to this Court because all procedural requirements for removal are satisfied, and this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).[2]

## II. USAA FSB HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

4. Under 28 U.S.C. § 1446(b), the "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." As stated above, Defendant stipulated to waive formal service of process on October 2, 2024. Thus, the Notice of Removal is timely, as it is filed within 30 days of the stipulation waiving formal service of process. *E.g.*, *Peterkin v. FedEx Freight, Inc.*, No. 20-CV-04439-EK-JRC, 2021 WL 5508093, at *6 (E.D.N.Y. Sept. 14, 2021), *report and recommendation adopted*, No. 20-CV-4439(EK)(JRC), 2021 WL 4520032 (E.D.N.Y. Oct. 4, 2021) (holding that service under New York law was not complete until the parties entered into a stipulation in which defendants waived any

---

forthcoming motion to compel arbitration of Plaintiff's claims. *See* ECF No. 9. The pre-motion conference was adjourned pending settlement discussions, but the parties were unable to reach agreement on settlement. Plaintiff voluntarily dismissed the action on June 17, 2024 without the consent of USAA FSB and then refiled the State Action. *See* ECF No. 20.

[2] Indeed, Plaintiff's prior federal complaint relied on CAFA to establish subject-matter jurisdiction. *See* Am. Compl. ¶ 17, *Solana*, Case No. 1:23-cv-06793-NCM-JRC ("This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a putative class action involving several thousand Class Members and because the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Moreover, Plaintiff, many absent Class Members, and Defendant are citizens of different states.").

challenges to defective service and that the removal deadline was calculated from the date of the stipulation).

5.      The United States District Court for the Eastern District of New York embraces Kings County, which is the county in which Plaintiff filed the State Action.  28 U.S.C. § 112(c); 28 U.S.C. § 1441(a) (mandating venue for removal actions).

6.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served on USAA FSB are attached hereto as **Exhibit A**.

7.      Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff and a copy is being filed with the Clerk of the Supreme Court of Kings County, New York.

### III.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION UNDER CAFA

8.      The State Action is a civil action over which this Court has original jurisdiction pursuant to CAFA.  Under CAFA federal courts have original jurisdiction over a class action if: (1) it involves 100 or more putative class members; (2) any class member is a citizen of a state different from any defendant; and (3) the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).  The State Action meets these requirements.

9.      To remove a case under CAFA, a defendant need only "file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal'"—*i.e.*, the same liberal pleading standard set forth in Federal Rule of Civil Procedure 8(a), requiring only plausible allegations as to the basis for removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)).  USAA FSB easily meets this standard.

10. As set forth below, this is a putative nationwide class action in which Plaintiff alleges that: (1) there are more than 100 members in Plaintiff's proposed class; (2) minimal diversity exists; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate, exclusive of interests and costs. Accordingly, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d).

### A. The State Action Is a "Class Action" Under CAFA

11. CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule or judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 26 U.S.C. § 1332(d)(1)(B).

12. Here, Plaintiff states that he "brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to CPLR § 903," (Compl. ¶ 44); he contends that a "class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit[,]" (Compl. ¶ 52); and he seeks "[a]n order certifying this case as a class action[,]" (Compl. at 15). Actions seeking class treatment in this manner are "class actions" under CAFA. *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 724 (S.D.N.Y. 2011) ("CAFA jurisdiction attaches when a case is filed as a class action….") (quoting *In re Burlington Northern Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir.2010)).

### B. The Putative Class Consists of More Than 100 Members

13. The putative class consists of more than 100 individuals. Plaintiff claims that "[t]he . . . Incident has impacted approximately 18,000 persons" and that "[t]he members of the Class,

therefore, are believed to be so numerous that joinder of all members is impracticable. Compl. ¶ 46. By Plaintiff's own allegations, the requirement of 100 or more class members is met.

      **C.**    **Minimal Diversity Exists**

14.    Under CAFA's "minimal diversity" requirement, a "federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014) (quoting 28 U.S.C. § 1332(d)(2)(A)).

15.    USAA FSB is a Federal savings association with its home office in Texas. USAA FSB, therefore, is a citizen of Texas for diversity purposes. *See* 12 U.S.C. § 1464(x) ("In determining whether a Federal court has diversity jurisdiction over a case in which a Federal savings association is a party, the Federal savings association shall be considered to be a citizen only of the State in which such savings association has its home office."); *AF Trucking Inc. v. Bus. Fin. Servs., Inc.*, No. 19-CV-8149 (CS), 2020 WL 2765678, at *3 (S.D.N.Y. May 28, 2020) (recognizing same); *Silva v. Northfield Bancorp, Inc.*, No. 12-CV-555 ENV LLB, 2012 WL 1884698, at *1 (E.D.N.Y. May 18, 2012) (same).

16.    As alleged, at least one member of the putative class is a citizen of a state other than Texas because Plaintiff states he is a citizen of New York. Compl. ¶ 15. Minimal diversity exists under CAFA.

      **D.**    **The Amount-in-Controversy Requirement Is Satisfied**

17.    To establish CAFA's amount-in-controversy requirement, a defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee*, 574 U.S. at 89. Plaintiff seeks "compensatory,

consequential, and punitive damages" on behalf of himself and a putative class of approximately 18,000 individuals based on a broad range of alleged harms, including:

    (a) the compromise, publication, theft and/or unauthorized use of their PII;

    (b) unauthorized use and misuse of their PII;

    (c) the loss of the opportunity to control how their PII are used;

    (d) out-of[-]pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

    (e) lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the . . . Incident, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

    (f) the imminent and certain impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

    (g) the continued risk to their PII that is subject to further breaches so long as Defendant fails to undertake appropriate measures to protect the PII in Defendant's possession;

    (h) current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the . . . Incident for the remainder of the lives of Plaintiff and Class Members;

    (i) loss of privacy; and

    (j) emotional distress and anguish related to the years of potential identity theft they face.

Compl. ¶¶ 46, 79–80.

    18.    Plaintiff also seeks no less than 16 forms of far-ranging and intensive injunctive relief, including but not limited to an order:

    (1) requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    (2) requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the

6

Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

(3) requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff and Class Member's personal identifying information;

(4) prohibiting Defendant from maintaining Plaintiff's and Class Members' personal identifying information on a cloud-based database;

(5) requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

(6) requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

(7) requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

(8) requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

(9) requiring Defendant to conduct regular database scanning and securing checks;

(10) requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

(11) requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

(12) requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

(13) requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

(14) requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

(15) requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

(16) for a period of 10 years, appointing a qualified and independent third[-]party assessor to conduct attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

*See* Compl. at 15–16.

19.    Although USAA FSB denies that Plaintiff or any putative class member has suffered any cognizable injury or is entitled to any relief, the State Action exceeds the $5 million amount-in-controversy threshold.

20.    For example, one form of compensatory damages alone satisfies the amount in controversy threshold. Specifically, Plaintiff seeks on behalf of himself and the putative class "out-of-pocket costs associated with the prevention, detection, recovery and remediation from theft or fraud" and "current and future costs in terms of . . . money that will be expended to prevent, detect, contest, remediate and repair the impact of the . . . Incident *for the remainder of the lives of Plaintiff and Class Members*." Compl. ¶ 79 (emphasis added). This, includes, Plaintiff alleges, "surveillance of . . . financial and personal records" including "monitoring." *Id.* ¶ 40. In terms of monitoring, Plaintiff explains that "[w]hen individuals have their personal information stolen, they are at substantial risk for imminent identity theft, and need to take steps to protect themselves, including, for example, buying credit monitoring services." *Id.* ¶ 68.

21. The cost of credit monitoring for the "remainder of the lives" of each member of the putative class alone far exceeds the jurisdictional threshold. *See Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. C13-1238, 2014 WL 2945741, at *6 (E.D.N.Y. June 30, 2014) (finding it "hard to see" how $5 million was not exceeded for a class "in the thousands" and a claim for actual damages including loss, out-of-pocket expenses, and an administered fund covering more than a year of comprehensive credit monitoring, even without consideration of punitive damages); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73–74 (D. Conn. 2008) (finding amount in controversy met in data breach action based on $14.95 monthly cost of credit monitoring); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.*, 580 F. Supp. 2d 273, 278 (S.D.N.Y. 2008) ("[P]laintiff is seeking credit monitoring costs for himself and for the putative class for an indeterminate period beyond one year. The amount of this claim could readily exceed $5 million, exclusive of interest and costs."). Credit monitoring for each of the approximately 18,000 affected individuals at a low-end $14.95 monthly cost for a mere two years—far less than the requested lifetime of monitoring—alone is $6,458,400 and exceeds the jurisdictional minimum. Thus, the Court's amount-in-controversy analysis can end here. *See Morales v. Conifer Revenue Cycle Sols., LLC*, No. 2:23-CV-01987-AB-AGR, 2023 WL 5236729, at *3 (C.D. Cal. Aug. 15, 2023) (stating that "because the cost of credit monitoring alone would exceed $5 million, the Court need not consider the other types of relief Plaintiff seeks").

22. Plaintiff also seeks damages for "lost wages and time[,]" Compl. ¶ 79, which is relevant to calculating the amount-in-controversy. *See Copple v. Arthur J. Gallagher & Co.*, 2022 WL 3357865, at *6 (W.D. Wash. Aug. 2, 2022) (citing calculation of lost time based on state hourly minimum wage during relevant period).

23. Plaintiff further seeks punitive damages. Compl. ¶ 80. Even at a conservative 1:1 ratio to compensatory damages, this additional form of relief would further exceed the minimum CAFA threshold. *See Aguirre*, 2023 WL 4046836, at *4; *see also Abdale*, 2014 WL 2945741, at *5–6.

24. The Court may also consider Plaintiff's extensive requests for 16 different forms of injunctive relief when assessing the amount in controversy. When determining the value of injunctive relief, "the amount in controversy is calculated from the plaintiff's standpoint; 'the value of the suit's intended benefit' or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." *Kheel v. Port of N.Y. Auth.*, 457 F.2d 46, 49 (2d Cir. 1972) (citation omitted). Here, Plaintiff asks the Court to require USAA FSB to implement a broad range of security practices, hire security auditors and internal security personnel, and appoint a "third[-]party assessor" to conduct annual reviews of USAA FSB to determine compliance with the Court's final judgment for a period of *no less than 10 years*. Compl. at 15–16 (emphasis added). Plaintiff claims such efforts are needed to protect 'the interests of Plaintiff and Class members." Compl. at 15–16. In addition to the other relief requested, the further expense of such efforts related to injunctive relief would far exceed the $5,000,000 minimum requirement.

25. That the amount in controversy exceeds the CAFA threshold is further supported by Plaintiff's own allegations. Plaintiff claims that "the aggregate damages sustained by the Class are in the millions of dollars." Compl. ¶ 52. And Plaintiff originally filed his case in this Court based on CAFA jurisdiction, wherein he explicitly alleged that "the amount in controversy exceeds $5,000,000." Am. Compl. ¶ 17, *Solana*, Case No. 1:23-cv-06793-NCM-JRC. Plaintiff seeks *identical* relief in the instant case based on the exact same set of facts, and his complaint provides

10

no suggestion as to why these facts were sufficient to support CAFA jurisdiction over Plaintiff's prior complaint in this Court but now bar removal of an identical state court action.

26.  In the event that Plaintiff challenges federal subject-matter jurisdiction, USAA FSB reserves the right to present additional evidentiary support to establish that the CAFA amount-in-controversy requirement is satisfied.  *See Dart Cherokee*, 574 U.S. at 89 ("Evidence establishing the amount [in controversy] is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.").

### IV.  CONCLUSION

WHEREFORE, USAA FSB respectfully removes the State Action to this Court pursuant to 28 U.S.C. § 1441(b).

Dated: October 18, 2024

                                  Respectfully Submitted,

                                  /s/ Armin Ghiam

                                  Armin Ghiam
                                  HUNTON ANDREWS KURTH LLP
                                  200 Park Avenue
                                  New York, NY 10166
                                  (212) 908-6207
                                  aghiam@HuntonAK.com

                                  Jason M. Beach (pro hac forthcoming)
                                  HUNTON ANDREWS KURTH LLP
                                  Bank of America Plaza, Suite 4100
                                  600 Peachtree Street, NE
                                  Atlanta, Georgia 30308-2216
                                  Tel.: (404) 888-4000
                                  Email: jbeach@huntonAK.com

                                  Neil K. Gilman (pro hac forthcoming)
                                  HUNTON ANDREWS KURTH LLP
                                  2200 Pennsylvania Avenue, N.W.
                                  Washington, DC 20037-1701
                                  Tel.: (202) 955 15000
                                  Email: ngilman@hunton.com

*Counsel for Defendant USAA Federal Savings Bank*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 18, 2024, I served a true and correct copy of the foregoing on counsel of record via the Court's CM/ECF system. I further certify that on October 18, 2024, I sent the foregoing document by first-class mail to:

Rachel Dapeer
Dapeer Law, P.A.
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Tel: 305-610-5223
rachel@dapeer.com

Manuel S. Hiraldo
Hiraldo P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Tel: 954-400-4713
mhiraldo@hiraldolaw.com

*Counsel for Plaintiff Gerardo Solana*

                                                           Armin Ghiam